## VALIDITY OF ORDER BY A DE FACTO OFFICER TO RAZE A BUILDING.

Circuit Court of Cuyahoga County.

JOHN G. BRUGGEMAN V. CITY OF CLEVELAND.

Decided, May 16, 1904.

*Municipal Corporations—Officers—Municipalities May Raze Dangerous Buildings—Acts of De Facto Officers Valid.*

1. The acts of a *de facto officer* acting under a law, which at the time had not been declared unconstitutional, are valid.
2. The state in the exercise of its police power may delegate to municipalities the right to raze buildings which become dangerous to life or property.

*George A. Groot,* for plaintiff in error.
*N. D. Baker* and *C. J. Estep,* contra.

WINCH, J.; HALE, J., and MARVIN, J., concur.

Error to the court of common pleas.

The petition in this case alleges that Mr. Bruggeman was the owner of a certain parcel of land improved with a frame building; that on the 14th day of August, 1900, the city of Cleveland, though its agents, officers and servants, without any right whatever, entered upon said premises and tore down and destroyed said building, and he prays judgment for one thousand dollars.

The answer admits the plaintiff's ownership and says that R. J. Harks was, for more than a year preceding the 14th day of August, 1900, duly appointed, authorized and acting inspector of buildings in the city of Cleveland; that it was part of the duty of Harks to inspect the construction of new buildings, and to require old structures within the city to be maintained in safe and proper condition or torn down. It alleges that on the 14th day of August, the timbers of the building upon plaintiff's premises were rotten; that said building was liable to collapse at any time, and was so unsafe as to endanger life; that prior to that date, on the 17th day of March, 1900, and at other times, the said Harks, as building inspector, served upon the plaintiff

written notice requiring him to tear down said building, for the reason that it was dangerous and unsafe; that the plaintiff failed and refused to comply with said notice; that the public safety required immediate action, and that, therefore, on the 14th day of August, 1900, said Harks caused said unsafe and dangerous structure to be torn down.

The reply filed by the plaintiff admits that Harks was occupying a position called "Inspector of Buildings" in the city of Cleveland, but denies that he had any power or authority to tear down buildings; and asserts that whatever he did in that behalf was done in violation of the rights of the plaintiff, and without authority of law. The reply further asserts that the defendant, the city of Cleveland, had no right to destroy the plaintiff's building, whatever its condition was, for the reason that the law and ordinance under which the plaintiff destroyed said property, and which purported to confer authority upon the defendant to destroy and tear down property in said city, are unconstitutional and void.

The reply also contains the following:

"He denies all and singular the statements set forth in the defendant's answer inconsistent with the statements set forth in plaintiff's petition."

At the trial of the case an objection was made to the introduction of any testimony under the pleadings. This objection was sustained and a verdict for defendant directed. Such action of the trial court amounted to granting judgment on the pleadings, and a review of this case requires only an examination of the pleadings.

The petition, we think, states a cause of action.

Were there no reply to the answer, the question whether it sets forth a good defense would be one of law, to be determined by the court; but material allegations of fact in the answer are controverted by the reply, unless the judgment of the city as to the advisability of tearing down the building is not reviewable.

It is claimed by counsel for defendant in error that this reply contains only conclusions of law; that it is argumentative and does not squarely deny the allegations of the answer that the

timbers of plaintiff's building were rotten, that the building was unsafe and liable to collapse, that plaintiff was notified to take the building down, failed to comply and that the public safety required immediate action.

There is much merit in this criticism of the reply, but applying the rule that pleadings are to be liberally construed in favor of the pleader—stretching that rule, perhaps, to its utmost—we are disposed to say that the allegations of the petition that the city destroyed the building "without any right whatever," taken in connection with the denial in the reply of "all and singular the statements set forth in the defendant's answer inconsistent with the statements set forth in the plaintiff's petition," together were intended as a denial of the facts pleaded in the answer to which attention has been drawn.

So holding, it remains to determine whether the city acted under authority of law and whether the judgment of the city as to the facts and its discretion in the matter are reviewable.

The action complained of occurred on the 14th day of August, 1900, prior to the adjudication of the infirmity in the so-called "federal plan law" of the city of Cleveland. At that time Section 1545, sub-divisions 49 to 53, were in full force and effect. By Section 1545-53 it is provided that the director of fire service shall appoint an inspector of buildings who shall be an architect or builder, and who shall have all the power, perform all the duties and receive the same salary prescribed for the inspector of buildings by an act passed April 15, 1888, as amended April 11, 1890, entitled "An act to regulate the construction of buildings within any city of the first class and second grade," etc. Section 1545-49 gave to the fire department of the city of Cleveland the control and management of the inspection of buildings. At that time there likewise existed upon the statute books the so-called building code for the city of Cleveland, Section 2575, 1 to 52, being the same law as is referred to in Section 1545-53, where the powers of the building inspector are set forth. Among the powers and duties prescribed by this building code, in Section 2575-48, is the following:

"The owner or other party having an interest in any building, staging or other structure or any thing attached to or con-

nected with a building or other structure which shall be unsafe, so as to endanger life, shall immediately, upon notice received from the inspector, cause the same to be made safe and secure, or taken down, and where the public safety requires immediate action, the inspector may enter upon the premises with such assistants as may be necessary, and cause the said structure to be secured or taken down without delay, and the passersby to be protected at the expense of such owner or party interested.''

Among the general powers of municipalities at this time were those conferred by Section 1692 of the Revised Statutes, Subsection 1 of which provides that municipalities shall have power, and council may provide by ordinance for the exercise and enforcement thereof ''to preserve peace and good order, and protect the property of the municipal corporation and its inhabitants.'' Sub-section 17 includes, among the enumerated powers, the power to guard against injuries by fire; Sub-section 27, the power to regulate the erection of buildings, fences and other structures within the corporate limits; Sub-section 30, to organize and maintain a fire department, erect necessary buildings therefor, etc.

It is admitted by the pleadings that H. J. Harks was inspector of buildings in the city of Cleveland, and in destroying plaintiff's building, acted in behalf of defendant.

All the statutes above referred to have since August 14, 1900, been repealed, and in their stead the Ohio Municipal Code has been enacted.

Plaintiff claims that the statutes above referred to are unconstitutional, being special legislation. Such is the case, but we hold that the acts of Harks in the premises were the acts of a *de facto officer*, acting under a law which had not at the time been declared unconstitutional, and that his official acts while so acting are valid. *State, ex rel,* v. *Bingham,* 11 C. C., 245; *Hick* v. *the Findlay Window Glass Co.,* 16 C. C., 111; *State* v. *Gardner,* 54 O. S., 24.

It is further claimed by plaintiff that the law is in contravention of the constitutional provision that private property

shall ever be held inviolate, and shall not be taken for public use without compensation therefor being first made in money.

We think not; the statute is in exercise of the police power of the state. Upon this subject see *Dillon on Municipal Corporations,* Sections 141, 379, 955; *Evansville* v. *Miller,* 38 L. R. A., 161, and extended note.

The above authorities dispose of the contention by plaintiff that the city had no authority to tear down his building no matter what its condition, but they all recognize the rule that if the public good did not require the act to be done—if the act was not apparently and reasonably necessary, the actors can not justify, and would be responsible.

We think the plaintiff attempted to raise the latter issue, *i. e.,* that the public good did not require the tearing down of his building; that such tearing down was not apparently and reasonably necessary; and on this issue he should have been permitted to go to the jury.

For this reason it was error for the trial judge to sustain the defendant's objection to the introduction of any evidence by the plaintiff and to direct a verdict for the defendant, and for said error the judgment is reversed.