THE VILLAGE OF VILLA PARK *et al.* Appellants, *vs.* THE WANDERER'S REST CEMETERY COMPANY *et al.* Appellees.

*Opinion filed February 17, 1925—Rehearing denied April 11, 1925.*

1. CEMETERIES—*cemetery is created by the act setting apart the ground for burial.* A cemetery is not created by the use of the tract of land for burial of the dead but by the act of setting apart the ground for such burial, marking it and distinguishing it from adjoining ground as a place of burial.

2. SAME—*cemetery is not a nuisance per se.* A cemetery is not a nuisance *per se* which is subject to absolute prohibition by legislative action, and before its use can be enjoined as a nuisance it must be proven by clear and satisfactory evidence to be a present nuisance and not merely that it may become one.

3. SAME—*the use of land as a cemetery cannot be enjoined as offensive to æsthetic sense.* The use of land as a cemetery cannot be enjoined at the suit of an adjoining land owner on the ground that such use is offensive to his æsthetic sense.

4. SAME—*ground for legislative regulation of cemeteries.* The right of local legislative bodies to regulate and prohibit the use of land for a cemetery is upon the ground that it may endanger the life and health of the people in the locality and not upon the grounds that a cemetery is not agreeable to contemplate, that it annoys nervous or superstitious persons or makes the vicinity less attractive for dwelling or business places, thereby lessening the value of adjoining lands.

5. SAME—*purchasers of lots in cemetery acquire vested rights.* Where a cemetery has been platted and lots sold with reference to the plat the purchasers of the lots acquire vested rights, of which they cannot be deprived without due process of law.

6. SAME—*when ordinance prohibiting cemetery has no application.* An ordinance prohibiting the establishment of a cemetery within one mile of the village limits is prospective, only, and has no application to a cemetery already established on land which is more than a mile from the city limits and which is not brought within such distance until a subsequent annexation proceeding after the cemetery was established, the land dedicated and lots sold for cemetery purposes and large expenditures made for improvements.

APPEAL from the Circuit Court of DuPage county; the Hon. MAZZINI SLUSSER, Judge, presiding.

CHARLES W. HADLEY, and EDMOND W. POTTLE, for appellants.

DELBERT A. CLITHERO, FREDERICK C. HARBOUR, and ROBERT N. HOLT, for appellees.

Mr. JUSTICE HEARD delivered the opinion of the court:

This is a proceeding instituted in the circuit court of DuPage county by appellants, the village of Villa Park, a municipal corporation, and Magdalena Junk, seeking to restrain appellees from establishing or dedicating a cemetery within one mile of the corporate limits of the village of Villa Park. Two grounds are set up in the bill of complaint upon which the injunction is asked. The first is an ordinance of the village of Villa Park, which provides: "No person, persons, corporation, association or company shall hereafter establish or dedicate any cemetery within one mile of the corporate limits of the village of Villa Park. To do the same is hereby prohibited." The second is that the establishing of a cemetery on the premises described in the bill would greatly injure and depreciate the value of the property in the village of Villa Park; that the village is a rapidly growing municipality, and that the establishing of the cemetery would greatly damage and depreciate the value of the lands in the vicinity and would make the same unfit and undesirable for modern homes, and that the estab-

lishment of a cemetery would constitute a public nuisance. Upon a hearing the circuit court entered a decree dismissing the bill for want of equity, from which decree an appeal has been perfected to this court.

A cemetery is a place or area of ground set apart for the burial of the dead. A cemetery is not created by the use of the tract of land for the burial of the dead, but what creates the cemetery is the act of setting the ground apart for the burial of the dead, marking it and distinguishing it from the adjoining ground as a place of burial. (*Concordia Cemetery Ass'n* v. *Minnesota and Northwestern Railroad Co.* 121 Ill. 199; 11 Corpus Juris, 50.) A deed conveying a described tract of land as a cemetery would be the dedication of it as a cemetery and the prescribing of its boundaries.

Burial places are indispensable. Convenient to the city of the living a depository of the dead must be established and maintained. It concerns the public health, and if such places were not prepared by private enterprise it would be the duty of the State to act in the premises. Among the most beneficent acts of government is that legislation which fosters such enterprises and clothes an aggregate number of citizens with power to adorn and beautify ground which receives the remains of our dead. Such a place is very far from being a nuisance *per se* and the subject of absolute prohibition by legislative action. (*Town of Lake View* v. *Letz,* 44 Ill. 81; *Town of Lake View* v. *Rose Hill Cemetery Co.* 70 id. 191.) A cemetery may be objectionable or offensive to the taste of an adjoining owner, but its use cannot be enjoined merely because it is offensive to the æsthetic sense of such proprietor. Before it can be abated or its use enjoined as a nuisance it must be clearly and satisfactorily proven to be a nuisance, and this cannot be done by evidence tending to show that it might become such. (*Sutton* v. *Findlay Cemetery Ass'n,* 270 Ill. 11.) There is no evidence in the present case that any danger

to human life or health could result from the use of the premises in question as a cemetery or which would in any way tend to prove the same a nuisance.   There are no lands within over a mile of the cemetery which are used for any purpose other than farming, and there are only two houses within such limit.

Over the objection of appellees appellants introduced evidence that the location of a cemetery upon the premises described in the bill of complaint would lower the value of the real estate within the village; that people would not care to buy lots and build homes close to a cemetery; that the establishment of a cemetery would bring an element of people into the town and over the main thoroughfare of the village which they would have to travel in getting to the cemetery, and the people living along the thoroughfare would not like to have this crowd passing along the street; that the people coming to buy homes would not like to locate there, and it would lower the values of land on the thoroughfare and of the surrounding territory.   The right of the local legislative body to regulate and prohibit the maintenance of cemeteries is placed on the ground that they may endanger life or health by corrupting the atmosphere, or the waters of wells, streams or springs in the vicinity, by reason of emanations from the bodies in process of decay.   Such prohibitions could not be upheld on the ground cemeteries are not pleasant to the eye, or that they are not agreeable subjects of contemplation, or they are a source of annoyance to nervous or superstitious persons, or that they make the vicinity less attractive as a dwelling place or for business, and thereby lessen the value of adjoining lands.   *A. L. & I. Co.* v. *County of San Mateo,* 167 Cal. 434.

On September 16, 1922, Charles F. Heinig, who was the moving spirit in the cemetery project, entered into a contract for the purchase of the lands in question with Otto Ahrens.   The next day, Sunday afternoon, about

thirty persons gathered upon the premises, and at the request of Heinig the Rev. R. Keene Ryan, a Presbyterian minister, there held a dedicatory service, in which he said, among other things, that they were met for the purpose of dedicating and setting aside for the burial of the dead the tract of land, (describing it by metes and bounds,) to be known hereafter as Wanderer's Rest Cemetery; that he had been chosen by the directors of this enterprise and that he would hereby set aside this plat of ground for the future burial of the dead who may be brought here for interment, and said, "I do here and now, in the name of the Lord Jesus Christ, dedicate and consecrate this ground forever for said sacred use." This dedicatory address was reduced to writing, acknowledged by Ryan before a notary public, and by appellees filed for record in the recorder's office of DuPage county on September 4, 1923. In September, 1922, Heinig applied to and employed the Swain & Nelson Sons Company to make a topography of the premises. They made a design and plat of the cemetery, which was delivered early in February, 1923. December 18, 1922, the village of Villa Park passed the ordinance set out in the bill of complaint prohibiting the establishment of a cemetery within a radius of one mile outside of the village. At the time this ordinance was passed no part of the premises in question was within the radius of one mile of the nearest boundary line thereto of the village of Villa Park.

Early in January, 1923, a sign 10 x 100 feet was erected at the entrance of the premises, on which was inscribed, "Wanderer's Rest Cemetery." February 17, 1923, the Wanderer's Rest Cemetery Company was incorporated under the laws of this State. On the 9th of May, 1923, a deed was made from Ahrens and wife to Charles F. Heinig for the premises in question, and a deed from Heinig and wife to the Wanderer's Rest Cemetery Company for the same premises was made and placed in escrow with the Elmhurst State Bank, at which time $7000 of the purchase

money was paid. Thereafter the entire amount of the purchase price, which was a little over $39,000, was paid and the deed placed upon record. On August 18, 1923, the cemetery company ordered granite entrance pillars at a cost of $22,500, and on August 21, 1923, the cemetery company made a contract for steel fencing at a cost of $26,386, and some time thereafter a contract was entered into for 12,000 feet of drainage pipe. From time to time cemetery lots were sold to the public, for cash and on part payments, to the amount of about $110,000.

August 3, 1923, a petition for the annexation to the village of Villa Park of certain farm lands lying between the village and the premises in question, signed by three persons, was filed with the village clerk. Ten days later an ordinance was passed calling for an election upon the proposition of the annexation of such territory. On September 8, 1923, the annexation election was held and a majority of the votes cast were in favor of annexation. On September 11 an annexation ordinance was passed, which was approved on the 17th. On November 5, 1923, a certificate by the clerk and president of the village was filed for record in the office of the recorder of deeds of DuPage county. It is contended by appellees, and the evidence tends to show, that the petition for annexation was not signed by a majority of the land owners and of the legal voters residing in the premises described in the petition, as required by statute. Appellants contend that the legality of the annexation proceedings cannot be adjudicated in this proceeding. In the view which we take of this case it is not necessary to pass upon that question. When the cemetery ordinance was passed the premises in question were not within one mile of the village limits, and so it could not at that time have any effect upon the dedication, establishment or use of the premises as a cemetery. The ordinance was prospective and not retroactive. If the annexation proceedings were valid the ordinance could have

no force and effect, by reason of such annexation proceedings, upon any cemetery which had been dedicated and established before such annexation took place. The word "establish" has many meanings, varying with the subject matter with reference to which it is used. Webster's New International Dictionary gives this definition of the word "establish," when used with reference to a State, a colony or other institutions: "To originate and secure the permanent existence of; to found; to institute; to create and regulate." By reason of the interest of the public in the establishment of cemeteries, and the fact that the ordinance in question is penal in its nature, it must be strictly construed against appellants. When a cemetery has been platted and lots sold with reference to the plat, the purchasers of the lots acquire a vested interest in the use of the premises for burial purposes, of which right they cannot be divested without due process of law.

The premises in question having been purchased for a cemetery and dedicated as a cemetery, (the dedication having been made a matter of record,) having been designated as a cemetery by a sign placed thereon, having been platted as a cemetery, the lots having been offered for sale to the public with reference to the plat, sales to the amount of $110,000 having been made and permanent improvements of the value of over $50,000 made prior to the purported annexation proceedings, by which the village limits are said to have been brought within one mile of the premises in question, it must be held that the premises were created, dedicated and established as a cemetery prior to the annexation proceedings. The ordinance of the village prohibiting the dedication and establishment of a cemetery within one mile of the corporate limits of the village can therefore have no application to the premises in question, and the court properly dismissed the bill for an injunction.

The decree of the circuit court is affirmed.

*Decree affirmed.*