## No. 14,066.

### DeBlanc & Landry vs. Mayor and Board of Trustees of the Town of New Iberia.

#### Syllabus.

1. Where the conducting of a liquor saloon is a *legally* legitimate business in the sense that it is permitted by license in a municipal corporation, it is not a nuisance *per se,* and not a thing or occupation that *must necessarily* become a nuisance.

2. This being so, it is not within the power of the town authorities to single out a certain saloon, arbitrarily declare it a nuisance and order it closed, and, if the order be not obeyed fine the proprietor for not obeying.

A PPEAL from the Nineteenth Judicial District, Parish of Iberia—
*Thorpe, Judge ad hoc.*

*Broussard, Dulany & Broussard,* for Plaintiffs, Appellees.

*Andrew J. Cammack,* for Defendants, Appellants.

The opinion of the court was delivered by

BLANCHARD, J. Plaintiffs are retail grocer merchants and liquor dealers. They conduct a saloon in the rear part of their store.

They were served with written notice to close their saloon within three days from the date of the notice, and to discontinue that business. The reason assigned for this was that their saloon had been declared a nuisance.

The notice was signed by the Mayor of the town of New Iberia.

Whereupon, they brought this suit to prevent by injunction the closing of their saloon, and attack the municipal ordinances, under which the town authorities are proceeding, on the ground that the same are illegal, unconstitutional and oppressive.

There are two ordinances. The first, in its first section, declares it shall be unlawful for any person to use boisterous or obscene language in any store, shop, saloon, barrel-house, negro dive, café or other public place, and subjects the person so offending to a fine of not less than five nor more than ten dollars, or to imprisonment for a period of not less than five nor more than ten days, or both, at the discretion of the Mayor.

This is a perfectly proper and lawful exercise of municipal authority.

The second section requires the proprietor or manager of any such establishment to inform the police officer of any violation of the provisions of the first section that may take place in his establishment, under penalty, if he does not do so, of having his place of business declared a nuisance and closed after three days' notice. And the section then goes on to declare that if, after such notice, the proprietor or manager fails to close he shall be liable to a fine of from twenty-five to one hundred dollars, or to imprisonment for not less than ten nor more than twenty-five days for each week or fractional part of a week he so neglects to comply with the order to close.

Some two months following the adoption of this ordinance, which is general in its terms, the town authorities adopted another, directing the Mayor to notify plaintiffs to discontinue the use of their premises as a saloon, and should they fail to obey the notice, "to have the premises closed up as a public nuisance without delay under the

ordinance passed November 6, 1898, concerning nuisances," which was the ordinance first referred to.

It is the second section of the first ordinance and the whole of the second ordinance that plaintiffs attack as illegal and oppressive.

It appears that the town of New Iberia has not prohibited the carrying on of the retail liquor business within its limits. The same is permitted, and licenses are issued therefor both by the State and the corporation. It would seem, therefore, that the business of conducting a saloon in the town is a *legally* legitimate business. It is not a nuisance *per se,* and not a thing or occupation that *must necessarily* become a nuisance. Board of Aldermen vs. Norman, 51 La. Ann. 736.

This being so, it is not within the power of the town authorities to single out a certain saloon, arbitrarily declare it a nuisance and order it closed, and if the order be not obeyed fine the proprietor for not obeying.

In the case cited *supra,* this court said:—

The fact that a particular use of property is declared a nuisance by a town ordinance, does not make it such unless it is *in fact* so and is embraced within the common law or statutory idea of a nuisance. The thing or act complained of must come within the legal notion of a nuisance, and where it does not, no authority to remove or abate is derived from the ordinance declaring it a nuisance. But where a thing or act complained of is a nuisance *per se,* or *must necessarily* become a nuisance, a town or city may, in the reasonable exercise of the police power, make regulations for the suppression and prohibition of the same.

Power conferred in general terms upon a municipality to prevent and abate nuisances does not authorize the *extra judicial* condemnation and distruction of that as a nuisance, which in its nature or situation is not such. Dillon Mu. Cor., 3rd Ed., Vol. 1, § 374; Hutton vs. City of Camden, 39 New Jersey, 122.

The right to be heard before condemnation, and make defense, is a cardinal principle in free governments. It pervades the spirit of, and is safe-guarded by, all the great charts and writs, which, wrung in a remote past from the reluctant hand of kingly power, laid the foundations of civil liberty itself. It is the very antithesis of absolutism.

For a town Council, by ordinance, to find conclusively against an owner of property, or a tenant of property, that a state of facts exists with respect to the use of the property, or the pursuit of his business, which subjects him to a condemnation, is to affect his rights in a vital point.

The next thing to depriving a man of his property is to circumscribe him in its use, and the right to use the property is as much under the protection of the law as the property itself is, and the one interest can no more be taken out of the hands of the ordinary judicial tribunals than the other can. 39 New Jersey, 122.

What are nuisances *per se,* is well established by jurisprudence and in the works of text writers, and it is equally well established that where a thing or act complained of is a nuisance *per se,* it may be so declared by ordinance and abated. But where the thing or act complained of is not a nuisance *per se,* and may not be a nuisance at all —depending on the facts—there is no authority vested in a town Council to enact an ordinance declaring it a nuisance and ordering its suppression, and such an ordinance is void and without effect.

And where, as in the instant case, an ordinance is passed declaring plaintiffs' business—even though it be a saloon—a common nuisance and ordering it closed, and in protection of their rights they invoke the equitable writ of injunction, at the same time attacking the ordinance in question as oppressive and without constitutional or legal warrant, the sole issue raised, or that can be raised, is as to the power of the Council to enact such an ordinance. If the power exist, the ordinance may be enforced; it does not exist, it cannot be enforced.

Whether or not the business as conducted by the plaintiffs is, *in fact,* a nuisance, does not properly arise, and should not be injected into the case.

But it may be competent for the municipal corporation, by proper proceedings taken, and where the parties affected are given a hearing and opportunity for defense, to have plaintiffs' saloon as conducted decreed a nuisance in fact—a common and continuous one—and abated and suppressed as such.

Wood's Law of Nuisances, 2nd Ed., Sec. 780.

And, also, while the town authorities may not close plaintiffs' business on the mere declaration that the same is a nuisance, it is competent for them to pass and enforce ordinances denouncing municipal penalties of fine and imprisonment against keepers of disorderly houses, and in this way *regulate* such establishments and prevent them from becoming nuisances.

Judgment affirmed.

BREAUX, J., takes no part.